1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOSEPH BECKER,                          No.  2:19-cv-00013 KJM GGH P

12                  Petitioner,

13         v.                                 FINDINGS AND RECOMMENDATIONS

14    HUNTER ANGLEA,

15                  Respondent.

16

17

18    *Introduction*

19         Petitioner, a state prisoner proceeding pro se, has filed an amended petition for writ of

20    habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 19. The matter was referred to the United

21    States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c). Respondent has

22    filed an answer, and petitioner has filed a traverse. ECF Nos. 33, 37.

23         Pro se habeas cases often bring murky issues to the fore. The potential for this is

24    exacerbated when the pro se individual represented himself at the underlying trial, quasi-

25    represented himself on appeal, and was completely pro se for post-conviction habeas petitions.

26    This case involves the exacerbated murkiness of issues. After carefully reviewing the filings, and

27    application of the applicable law, the undersigned recommends the amended habeas petition be

28    denied.

1

*Procedural Background*

On December 10, 2015, petitioner was convicted by a jury trial in Amador County Superior Court for one count of issuing criminal threats in violation of California Penal Code § 422(a).  ECF No. 32-5 at 92.[1]  The jury also found true sentencing enhancements pursuant to California Penal Code §§ 667(a)(1); 667.5(b). Id. Petitioner was sentenced 25 years to life plus 7 years for issuing a criminal threat for a total term of 32 years to life in state prison. Id.

Petitioner, through counsel, filed a direct appeal of his conviction on August 28, 2016. ECF No. 32-11. On February 15, 2018, the California Court of Appeal affirmed the judgment. ECF No. 32-14. On February 28, 2018, petitioner's counsel filed a petition for review with the California Supreme Court. ECF No. 32-15. On May 9, 2018, the California Supreme Court denied petitioner's petition for review. Id. On July 2, 2018, petitioner in pro se, filed a petition for writ of habeas corpus before the California Supreme Court, and was denied on October 31, 2018. ECF No. 32-24. [2]

On December 26, 2018, petitioner filed his federal habeas petition. ECF No. 1.[3] On March 5, 2019, respondent filed a motion to dismiss on the ground the petition contained unexhausted claims. ECF No. 13. After full submission of the parties' briefing, the undersigned denied the motion to dismiss without prejudice to renewal and afforded petitioner an opportunity to amend his petition to properly determine what claims petitioner sought to raise in his petition and whether these claims were fully unexhausted. ECF No. 17. On April 16, 2019, petitioner filed his first amended habeas petition (FAP). ECF No. 19. On June 6, 2019, respondent filed a motion to dismiss on the ground the petition contained unexhausted claims. ECF No. 22. After full briefing

---

[1] The abstract of judgment was corrected on remand by the California Court of Appeal, Third Appellate District to reflect defendant was convicted by jury and not by guilty plea. ECF No. 32-14 at 2, 21.

[2] As related in the "Exhaustion Revisited" section, petitioner filed several *pre-trial* habeas corpus petitions.  None of those issues raised are pertinent to the *trial* issues petitioner claims should require a vacating of his conviction in this petition.

[3] The court affords petitioner application of the mailbox rule as to all his habeas filings in state court and in this federal court. Houston v. Lack, 487 U.S. 266, 275–76 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir.2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period).

of the parties', on July 12, 2019, the undersigned issued findings and recommendations recommending the following: respondent's motion to dismiss be denied; summary dismissal of petitioner's Claim 2 and Claim 4's part relating to Double Jeopardy; and upon adoption of these findings and recommendations, respondent be ordered to answer Claim 1, Claim 3, and the Due Process Evidentiary portion of Claim 4. ECF No. 25. On August 9, 2019, the District Judge adopted the July 12, 2019 findings and recommendations in full and ordered respondent to answer Claims 1, 3 and the Due Process evidentiary claim of Claim 4. ECF No. 30. On August 26, 2019, respondent filed an answer. ECF No. 33. On October 8, 2019, petitioner filed his traverse. ECF No. 37.

This action proceeds on petitioner's amended habeas petition and Claim 1, Claim 3, and the Due Process Evidentiary portion of Claim 4 only.

*Issues Presented*

For ease of reference, the issues remaining for adjudication are as follows:

1. Claim 1—Insufficiency of the Evidence (the precise contours of this issue are further discussed in the section "Exhaustion Revisited," set forth below);

2. Claim 3—Petitioner's Right to an Impartial Jury (failure to interrogate jurors on their state of mind after a wildfire in the area required excusals of some jurors); and

3. Claim 4—Admission of Prior Convictions (Due Process only).

*Factual Background*

The California Court of Appeal fairly set forth the facts germane to this habeas petition in People v. Becker, No. C080909, 2018 WL 897499, at *1-2 (Cal. Ct. App. Feb. 15, 2018):

### *Prosecution Evidence*

In August 2011, defendant was an inmate at Mule Creek State Prison, where he used the library both as a priority and as a general user. Priority users are inmates who have upcoming court cases for which they are granted access to the library before recreational users. The victim was the librarian in charge of the library. The victim testified defendant was "constantly in the library just doing legal work and recreational work."

On August 16, 2011, the victim informed the priority users present in the library they had used more than their allotted four hours of time that day. Thus, she planned to let nonpriority users receive their

allotted two hours of time the next day before she would admit priority users. Defendant "had an issue with that" and "kept saying that he had upcoming court cases and what not and he needed access to the library." The victim asked the other inmates if they would grant defendant an exception to use the library the following day. The other inmates agreed to the exception. The victim informed defendant he could come into the library the next day. Defendant responded with comments, including that the victim "was creating an enemy situation." The victim told him if he "kept going" she would deny him access the next day. Defendant "got really frustrated. Stood up, slammed the computer desk shut really, really hard. And then he looked directly at [the] inmate clerk and stated, if you keep this up, I am going to break your neck or bash someone's face against the wall." The victim ordered defendant to leave the library, and defendant immediately complied.

The next day, defendant was held in a temporary holding cell for threatening the inmate clerk. Mule Creek State Prison Correctional Officer Mark Campbell was responsible for watching the inmates in the temporary holding cells. Officer Campbell heard defendant loudly exclaim: "I am going to catch up with you some day you fucking bitch and cut you up in little pieces." Due to the proximity of the library to defendant's holding cell, Officer Campbell believed defendant's threat was loud enough the victim could have heard it. At the time, Officer Campbell did not know whether the victim was in the library. However, he observed there were no other women around. Officer Campbell noted defendant "was complaining about [the victim] and how she was out to get him." Officer Campbell instructed defendant to be quiet, but defendant "continued to make threats, comments, suggest serious issues" with the victim.

Also while defendant was in the temporary holding cell, Mule Creek State Prison Officer Michael Rinehart observed defendant yelling and screaming. Defendant was yelling, "You are going to pay for this, you fucking bitch." Officer Rinehart understood defendant's threat to be directed toward the victim. Defendant did not appear to be angry at any other inmates in the holding cell area.

Arthur Suarez was an inmate at Mule Creek State Prison and was working in the program office nearby defendant's temporary holding cell. Around noon on August 17, 2011, Suarez heard defendant yell, "I will bump into you out there, you bitch. And when I see you, I am going to chop you up in little pieces and kill you. I know you can hear me. I know you can fucking hear me, bitch."

Around noon, the victim was in the library and could hear screaming and yelling from the temporary holding cell area. She was able to hear defendant's threat. The victim testified she heard defendant say, "[Y]ou fucking liar, you fucking cunt. I will catch up to you one day. You will be sorry." The victim understood defendant to be threatening her based on his use of the feminine pronoun and the reference to "fucking cunt."

The victim became scared, and her heart raced. She testified defendant's threat caused her to become "super nervous" and "super

scared." The victim waited until defendant was moved to administrative segregation before going to talk with the lieutenant and sergeant in the program office. The victim testified she was still fearful of defendant at the time of trial. She believed defendant would carry out his threat "if he got out."

### Defense Evidence

Defendant called as a witness Amador County District Attorney Investigator Ronald Rios. Rios testified that during the course of his investigation he learned defendant and Wilson, the inmate library clerk, did not get along. Defendant once accused Wilson of threatening him. On August 17, 2011, three inmates in addition to defendant were in temporary holding cells. The other three inmates were intoxicated on contraband alcohol. Before defendant was moved into administrative segregation, an evaluation of defendant noted defendant had an injury on his lower lip.

Mule Creek State Prison Correctional Lieutenant Thomas Tyler testified that on August 17, 2011, another woman in addition to the victim regularly worked in the same building that housed the library. Lieutenant Tyler acknowledged other women work at the prison and frequently entered and exited the building containing the library. However, Lieutenant Tyler could not recall which women other than the victim were present in the building that day. Lieutenant Tyler remembered being in his office and hearing defendant yelling but could not determine what defendant was saying. Lieutenant Tyler instructed Officer Campbell to go and write down what defendant was saying. Campbell did so and a crime incident report was initiated.

John Ambrose is a licensed private investigator who assisted defendant. Ambrose requested to interview the correctional officers connected with the case, but all of them refused to speak with him. Ambrose was unable to locate a paroled inmate who was connected with the case. And Ambrose was unable to enter the prison library because the prison was on lockdown the day he was there to investigate. Ambrose was able to enter the area that contained the temporary holding cells in which defendant was located when he issued his threats. Each temporary holding cell was slightly larger than a telephone booth and made of expanded metal screen. Ambrose testified it appeared to him each temporary holding cell was sufficiently secure to prevent an inmate from escaping. The prison library is located approximately four to five steps from the temporary holding cells.

*Exhaustion Revisited*

Normally, when a court issues a pretrial ruling on a motion to dismiss, the ruling becomes law of the case. See Gonzalez v. Arizona, 677 F.3d 383, 389 n.4 (9th Cir. 2012) ("Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case."). In his Answer, respondent has

1   again asked that certain aspects of Claim 1 relating to insufficient evidence, and the "double

2   jeopardy" claim of Claim 4 be found unexhausted. Specifically, respondent again urges that every

3   element of Cal. Penal Code § 422 is unexhausted, except for the "immediacy of the threat"

4   element. The undersigned finds that a clarification of the previous exhaustion ruling is necessary.

5        Along with his petition for review to the California Supreme Court, and a post-trial habeas

6   petition filed in the state supreme court, petitioner previously filed a myriad of pretrial and post-

7   trial habeas petitions.  He asserts that all of these filings prove that every element of Cal. Penal

8   Code § 422 is at issue with respect to the insufficiency of the evidence claim.[4]  However,

9   petitioner mistakes his volume of filings as satisfying the exhaustion requirement instead of what

10   precisely was filed in the California Supreme Court. Exhaustion requires that each and every

11   federal claim which petitioner desires to be adjudicated in a federal habeas action be exhausted in

12   the *highest state court*—presentation of an issue to a lower court, but not the state's highest court,

13   does not exhaust the issue. Reese v. Baldwin, 541 U.S. 27, 29 (2004).

14        The only *post-trial* filings with the California Supreme Court were petitioner's petition for

15   review and a habeas petition. ECF Nos. 32-15; 32-24.[5]  The petition for review expressly limited

16   _____

17   [4] As set forth in People v. Becker, supra, 2018 WL 897499, at *3:

18           A conviction of issuing a criminal threat requires the prosecution to
             prove "all of the following: (1) that the defendant 'willfully
19           threaten[ed] to commit a crime which will result in death or great
             bodily injury to another person,' (2) that the defendant made the
20           threat 'with the specific intent that the statement ... is to be taken as
             a threat, even if there is no intent of actually carrying it out,' (3) that
21           the threat—which may be 'made verbally, in writing, or by means of
             an electronic communication device'—was 'on its face and under the
22           circumstances in which it [was] made, ... so unequivocal,
             unconditional, immediate, and specific as to convey to the person
23           threatened, a gravity of purpose and an immediate prospect of
             execution of the threat,' (4) that the threat actually caused the person
24           threatened 'to be in sustained fear for his or her own safety or for his
             or her immediate family's safety,' and (5) that the threatened
25           person's fear was 'reasonabl[e]' under the circumstances." ( *People
             v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

26   [5] Petitioner filed several habeas petitions for asserted *pre-trial* errors during the pendency of his
     criminal action in Superior Court, e.g., denial of a Marsden motion and violation of attorney-
27   client privilege.  However, even if one of these pre-trial motions commented that the evidence
     was insufficient at preliminary hearing to allow the case to go to trial, that assertion does not
28   relate in any way to whether the evidence submitted *at trial* was insufficient.

1   its insufficiency issue to be reviewed with respect to the "immediacy of the threat" element of

2   Cal. Penal Code § 422.  The issue presented to the state supreme court was as follows: "(1) Does

3   the threat 'I am going to catch up with you some day you fucking bitch and cut you up in little

4   pieces' convey the 'immediate prospect of execution' as required by Penal Code section 422

5   where made to a civilian prison librarian by a prisoner caged in a steel padlocked cell serving an

6   indefinite period in administrative segregation?"  ECF No. 32-15 at 9 (Issues on Review).  See

7   also ECF No. 32-14 at 18-24 (briefing only the "immediacy" aspect of § 422).[6] The second post-

8   trial filing with the California Supreme Court—a habeas petition—did not set forth the

9   sufficiency of evidence issue at all. ECF No. 32-24 at 4 (setting forth *only* a failure to permit a

10  substitution of appellate counsel issue).  While the underlying ineffective assistance of appellate

11  counsel for failure to brief all elements of § 422 was presented to the Court of Appeal, ECF No.

12  23, and attached to the California Supreme Court petition, a claim of ineffective assistance of

13  appellate counsel does not exhaust an underlying sufficiency of the evidence issue in either court.

14  Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir. 2005); Rose v. Palmateer, 395 F.3d 1108,

15  1111-1112 (9th Cir. 2005) Gaines v. Williams, No. 2:10-cv-01367-RLH, 2012 WL 1531968, at

16  *1 (D. Nev. Apr. 30, 2012); Labon v. Martel, No. CV 14-6500-DSF RNB, 2015 WL 1321533, at

17  *1 (C.D. Cal. Mar. 17, 2015); Meza v. Schroeder, No. CIV 071220-PHX-GMS DKD, 2010 WL

18  1381095, at *7 (D. Ariz. Mar. 9, 2010). Nor does the mere attachment of a previous habeas

19  petition change the nature of the issue expressly presented to the California Supreme Court. The

20  record does not bear out petitioner's contentions that his briefs and filings at all times raised the

21  sufficiency of the evidence issue for every element of Section 422.

22          Thus, when the undersigned found (as later adopted by the district judge) that the

23  sufficiency of the evidence issue had clearly been exhausted considering the citation of Jackson v.

24  _____

25  [6] Even the in the Court of Appeal, petitioner concedes that the lower appellate court was directed
    only to the "immediacy of threat" element of Section 422. See ECF No. 19 at 13. The appellate
26  court, although listing all the elements necessary for a §422 conviction as statutory background,
    specifically directed its discussion to the "immediacy" issue.  People v. Becker, supra, 2018 WL
27  897499, at *3 ("Defendant contends his conviction of issuing a criminal threat must be reversed
    because the evidence did not show any immediate prospect the threat would be carried out. We
28  disagree.")  Accordingly, this was the only issue *briefed* in the Court of Appeal on direct review.

Virginia, 443 U.S. 307 (1979) in the state supreme court Petition for Review, see ECF No. 15 at

18,  the undersigned was referencing *only* that theory of insufficient evidence concerning the

"immediacy of the threat." This was the issue specifically directed to and addressed by the Court

of Appeal and Cal. Supreme Court on direct review. Petitioner's requests that this court

independently review the sufficiency of the evidence with respect to all elements of §422, or even

now review the "communication of threat" element briefed for the first time in the traverse, ECF

No. 37, are unexhausted and therefore denied.[7]

Finally, to the extent that petitioner believes that the Double Jeopardy provisions of the

Constitution precluded admission of prior convictions (Claim 4 in the FAP), that claim has

already been summarily dismissed, and exhaustion, or non-exhaustion, of that theory is a moot

point. Claim 4 proceeds on evidentiary due process grounds only. As explained in that section,

supra, regarding this asserted due process error, exhaustion of the evidentiary issue is limited to

whether use of the prior convictions, without specifying the facts of the convictions, was a due

process error.

The undersigned now proceeds to the merits of the exhausted claims.

*Antiterrorism and Effective Death Penalty Act of 1996 Legal Standards*

The statutory limitations of the power of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved
> > an unreasonable application of, clearly established Federal
> > law, as determined by the Supreme Court of the United
> > States; or

---

[7] Nor would the undersigned find that petitioner should be granted a stay pursuant to Rhines v. Weber, 547 U.S. 198, 205-206 (2006), to further exhaust his contentions.  Petitioner loudly argued to the state appellate court in his post-trial habeas petition, ECF No. 23, that his counsel was ineffective for failing to raise all elements of §422 as being insufficiently found at trial.  His failure to make a direct claim of evidence insufficiency before the state courts on *all* elements cannot be considered diligent.

1

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

2

3    For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings

4    of the United States Supreme Court at the time of the last reasoned state court decision.

5    Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34,

6    39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529

7    U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general

8    principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has

9    not announced."  Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews,

10   587 U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so

11   widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

12   be accepted as correct. Id.

13   A state court decision is "contrary to" clearly established federal law if it applies a rule

14   contradicting a holding of the U.S. Supreme Court or reaches a result different from U.S.

15   Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634,

16   640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court

17   may grant the writ if the state court identifies the correct governing legal principle from the U.S.

18   Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

19   case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v.

20   Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue

21   the writ simply because that court concludes in its independent judgment that the relevant state-

22   court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

23   application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Schriro v.

24   Landrigan, 550 U.S. 465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a

25   federal habeas court, 'in its independent review of the legal question,' is left with a 'firm

26   conviction' that the state court was 'erroneous.'") "A state court's determination that a claim

27   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

28   correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011)

9

1  (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for

2  obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

3  ruling on the claim being presented in federal court was so lacking in justification that there was

4  an error well understood and comprehended in existing law beyond any possibility for fairminded

5  disagreement." Harrington, supra, 562 U.S. at 103.

6        The court looks to the last reasoned state court decision as the basis for the state court

7  judgment.  Stanley, supra, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

8  2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

9  from a previous state court decision, this court may consider both decisions to ascertain the

10  reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

11  banc). "[Section] 2254(d) does not require a state court to give reasons before its decision can be

12  deemed to have been 'adjudicated on the merits.'"  Harrington, supra, 562 U.S. at 100. Rather,

13  "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it

14  may be presumed that the state court adjudicated the claim on the merits in the absence of any

15  indication or state-law procedural principles to the contrary." Id. at 99. This presumption may be

16  overcome by a showing "there is reason to think some other explanation for the state court's

17  decision is more likely." Id. at 99-100.  Similarly, when a state court decision on a petitioner's

18  claims rejects some claims but does not expressly address a federal claim, a "federal habeas court

19  must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson

20  v. Williams, 568 U.S. 289, 293 (2013).  When it is clear, however, that a state court has not

21  reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d)

22  does not apply and a federal habeas court must review the claim de novo.  Stanley, supra, 633

23  F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d

24  1052, 1056 (9th Cir. 2003).

25        The state court need not have cited to federal authority, or even have indicated awareness

26  of federal authority in arriving at its decision.  Early v. Packer, 537 U.S. 3, 8 (2002). Where the

27  state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

28  federal habeas court independently reviews the record to determine whether habeas corpus relief

10

1    is available under § 2254(d).  Stanley, supra, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848,

2    853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional

3    issue, but rather, the only method by which we can determine whether a silent state court decision

4    is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas

5    petitioner still has the burden of "showing there was no reasonable basis for the state

6    court to deny relief." Harrington, supra, 562 U.S. at 98.  A summary denial is presumed to be a

7    denial on the merits of the petitioner's claims.  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir.

8    2012). While the federal court cannot analyze just what the state court did when it issued a

9    summary denial, the federal court must review the state court record to determine whether there

10   was any "reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98.

11   This court "must determine what arguments or theories ... could have supported, the state court's

12   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

13   arguments or theories are inconsistent with the application was unreasonable requires considering

14   the rule's specificity. The more general the rule, the more leeway courts have in reaching

15   outcomes in case-by-case determinations." Id. at 101 (quoting Knowles v. Mirzayance, 556 U.S.

16   111, 122 (2009)). Emphasizing the stringency of this standard, which "stops short of imposing a

17   complete bar of federal court relitigation of claims already rejected in state court proceedings[,]"

18   the Supreme Court has cautioned that "even a strong case for relief does not mean the state

19   court's contrary conclusion was unreasonable."  Id. at 102 (citing Lockyer, supra, 538 U.S. at 75).

20   *Discussion*

21           Claim One: Sufficiency of the Evidence (Immediacy of the Threat)

22           Petitioner argues there was insufficient evidence to support his conviction for criminal

23   threats pursuant to Cal. Penal Code 422 with respect to the immediacy of the threat element. The

24   petition for review presented before the California Court of Appeal and the California Supreme

25   Court raised the issue now pending before us. See ECF Nos. 32-15, 32-24.  Accordingly, because

26   the last explained decision regarding this issue is contained in the Court of Appeal opinion, the

27   ////

28   ////

1    California Court of Appeal's opinion on this issue is deemed adopted by the California Supreme

2    Court and is entitled to AEDPA deference.  See Ylst v. Nunnemaker, 501 U.S. 797, 802-06,

3    (1991); Curiel v. Miller, 830 F.3d 864, 870 (9th Cir. 2016).[8]

4                            ***Sufficiency of the Evidence of Criminal Threat***

5                            Defendant contends his conviction of issuing a criminal

6         threat must be reversed because the evidence did not show any
          immediate prospect the threat would be carried out. We disagree.

7                                              ***A.***

8                                    ***Standard of Review***

9                            Challenges to the sufficiency of the evidence supporting a

10        conviction are reviewed under the substantial evidence standard of
          review. (*In re George T.* (2004) 33 Cal.4th 620, 630.) "Under that

11        standard, ' "an appellate court reviews the entire record in the light
          most favorable to the prosecution to determine whether it contains

12        evidence that is reasonable, credible, and of solid value, from which
          a rational trier of fact could find [the elements of the crime] beyond

13        a reasonable doubt." ' " (*Id.* at pp. 630-631.) The substantial
          evidence standard of review requires we " 'presume in support of

14        the judgment the existence of every fact the jury could reasonably
          have deduced from the evidence.' " (*People v. Manibusan* (2013)

15        58 Cal.4th 40, 87.) "The conviction shall stand 'unless it appears
          "that upon no hypothesis whatever is there sufficient substantial

16        evidence to support [the conviction]." ' " (*People v. Cravens* (2012)
          53 Cal.4th 500, 508, quoting *People v. Bolin* (1998) 18 Cal.4th 297,

17        331.)

18                                             ***B.***

19                                    ***Criminal Threat***

20                            A conviction of issuing a criminal threat requires the

21        prosecution to prove "all of the following: (1) that the defendant
          'willfully threaten[ed] to commit a crime which will result in death
          or great bodily injury to another person,' (2) that the defendant

22        made the threat 'with the specific intent that the statement . . . is to
          be taken as a threat, even if there is no intent of actually carrying it

23   _____

24   [8] Petitioner cannot have it both ways with respect to AEDPA deference.  That is, he cannot argue
     that the state courts never reached the federal issue, explicating only state law (therefore there

25   was no ruling on the federal issue), but then argue his federal sufficiency of the evidence issue is
     exhausted with respect to the immediacy of the threat sufficiency issue.  As stated in the

26   exhaustion section, the undersigned is liberally construing the filings before the California
     Supreme Court as raising the federal issue even though the discussion of federal law in those

27   filings is scant (citation in one sentence to Jackson v. Virginia, 443 U.S. 307 (1979).  In any
     event, the undersigned's findings regarding sufficiency of the evidence would be identical—

28   AEDPA deference or not.

out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

The requirement that a threat under section 422 be "immediate" has been construed to include threats "made to convince the victim to do something '*or else*.' " (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538, italics added.) As the *Melhado* court recognized, "threats often have by their very nature some aspect of conditionality." (*Ibid*.) Nonetheless, these types of threats fall under section 422 when they involve a "degree of seriousness and imminence which is understood by the victim to be attached to the future prospect of the threat being carried out, should the conditions not be met." (*Ibid*.)

## C.

### Defendant's Threat to Kill the Victim

We reject defendant's contention the evidence of defendant's threat against the victim was insufficient because he issued the death threat while locked inside a temporary holding cell. Defendant stated he would "catch up to [the victim] one day," and would kill her when he would "bump into [her] out there." Defendant indicated an expectation he would eventually be released from administrative segregation to threaten: "And when I see you, I am going to chop you up in little pieces and kill you."

The victim testified she believed defendant would carry out his threat if he got out of administrative segregation. Her fear reflected her experience he had "constantly" been in the prison library and in close proximity to her. The victim's past interactions with defendant as part of her job supported her belief defendant would carry out his threat when he had the opportunity. During their last interaction, defendant had angrily slammed the computer desk, threatened violence against the inmate library clerk, and stated the victim had created "an enemy situation." Defendant's threat on August 17, 2011, combined with his prior history with the victim, provided substantial evidence for the jury to find defendant expressed an intent to kill the victim as soon as he gained the opportunity.

Defendant cites several cases involving threats by in-custody defendants to support his argument he did not convey an immediate prospect of executing his threat. None of these cases helps defendant. Defendant's attempt to distinguish these cases is unavailing. If anything, the factual similarities support the finding of a criminal

threat. In *People v. Franz* (2001) 88 Cal.App.4th 1426, this court affirmed convictions of section 422, including one made when the defendant was standing "behind the [police] officer, and defendant 'swiped his hand across his throat' perhaps twice, shook his head and put his finger to his lips, which [the victim] understood to mean defendant would slice his throat if he said anything to the police." (*Id.* at p. 1436.) In affirming the conviction, we rejected an argument that "there is no substantial evidence of immediacy because the police officer was present during the threat and thereafter escorted defendant away from the scene, and neither [victim] saw defendant again until prosecution of this matter." (*Id.* at p. 1449.) This court explained that "[t]he immediacy factor was present in the surrounding circumstances that defendant was in a rage." (*Ibid.*) Moreover, we noted that although "the officer was present when defendant made the threat, the threat and surrounding circumstances were a reminder that the officer would not always be there to protect" the victims. (*Ibid.*) The same reasoning applies in this case. Although defendant could not immediately carry out his threat, he made clear in his threat that he expected to eventually "bump into" the victim and use the opportunity to kill her.

For similar reasons, defendant misplaces his reliance on *People v. Gaut* (2002) 95 Cal.App.4th 1425 (*Gaut*). *Gaut* involved a conviction of section 422 for a threat issued while the defendant was in jail. (*Id.* at p. 1427.) The defendant challenged his conviction on grounds that "there was insufficient evidence to support his conviction for violating section 422 as a matter of law because he was incarcerated when the threats were made." (*Ibid.*) The evidence in *Gaut* showed the defendant had a history of threatening and becoming physically violent with the victim. (*Id.* at p. 1431.) After being arrested, the defendant repeatedly called the victim from jail and issued numerous death threats against her. (*Id.* at p. 1428-1429.) The victim attended the defendant's parole violation hearing, which caused her to fear defendant would soon be released. (*Id.* at p. 1432.) Some of defendant's subsequent threats "made reference to the fact that she had only a few days until he would be released: 'Just three more days'; 'You got three more days to apologize for your disrespect'; and 'Hey tramp. I'm gon[na'] spare you one more day.' " (*Id.* at p. 1432.)

The *Gaut* court held the evidence showed defendant's "threats were specific, unequivocal, and immediate" even though they were made while defendant was incarcerated. (95 Cal.App.4th at p. 1432.) As *Gaut* notes, " 'A threat is not insufficient simply because it does "not communicate a time or precise manner of execution, section 422 does not require those details to be expressed." ' " (*Id.* at p. 1432.) This case, like *Gaut*, involves an unequivocal threat that meets the definition of section 422 even though the defendant was not immediately able to carry out the threat. Section 422 "does not require an immediate ability to carry out the threat." (*Ibid.*, citing *People v. Lopez* (1999) 74 Cal.App.4th 675, 679–680.)

For similar reasons, we reject defendant's reliance on *People v. Mosley* (2007) 155 Cal.App.4th 313 (Mosley) and *People v.*

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Wilson* (2010) 186 Cal.App.4th 789 (*Wilson*). In *Mosley*, the defendant was convicted of section 422 for issuing threats against correctional officers that his fellow gang members would attack them outside of prison. (155 Cal.App.4th at pp. 320-321.) The defendant in *Mosley* argued that "he was known as a difficult inmate and the deputies were in control of his confinement and limited movement" so he could not have immediately carried out his threats. (*Id*. at p. 324.) The *Mosley* court affirmed the convictions based on evidence of past violence on correctional officers both by defendant himself and by gang members on other correctional officers. (*Id*. at pp. 325-326.)

And, in *Wilson*, a defendant's convictions of section 422 were affirmed based on threats to find a correctional officer and "blast" him when defendant would be released from prison in 10 months. (186 Cal.App.4th at p. 814.) As the *Wilson* court explained, "The only condition attached to the threat was that defendant intended to carry it out when he was released in 10 months. Defendant effectively made an appointment to kill [the victim] at his earliest possible opportunity—he would perform the act the instant he was set free." (*Ibid*.) Although the time frame to fulfill the threat to kill the victim in this case was not as certain, defendant's threat was unequivocal and indicated an intent to carry out the promised violence at the earliest opportunity. Here, as in Wilson and Mosley, the fact the threat could not be carried out immediately does not render the evidence insufficient. Accordingly, we reject defendant's sufficiency of the evidence challenge.

ECF No. 32-14 at 6-10.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Jackson established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010).

First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. [...] [W]hen "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S.Ct. 2781; *see also McDaniel*, 130 S.Ct. at 673–74.

Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable

15

1      doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

2      […]

3      At this second step, we must reverse the verdict if the evidence of
innocence, or lack of evidence of guilt, is such that all rational fact

4      finders would have to conclude that the evidence of guilt fails to
establish every element of the crime beyond a reasonable doubt." *See*

5      *id.*

6 Id. at 1164–65.

7    And, where the trier of fact could draw conflicting inferences from the facts presented,

8 one favoring guilt and the other not, the reviewing court will assign the one which favors

9 conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  However, the mere fact that

10 an inference can be assigned in favor of the government's case does not mean that the evidence on

11 a disputed crime element is sufficient—the inference, along with other evidence, must

12 demonstrate that a reasonable jury could find the element beyond a reasonable doubt. "'[A]

13 reasonable inference is one that is supported by a chain of logic, rather than mere speculation

14 dressed up in the guise of evidence.'" United States v. Katakis, 800 F.3d 1017, 1024 (9th Cir.

15 2015) (quoting United States v. Del Toro-Barboza, 673 F.3d 1136, 1144 (9th Cir. 2012)).

16    Superimposed on these already stringent insufficiency standards is the AEDPA

17 requirement that even if a federal court were to initially find on its own that no reasonable jury

18 should have arrived at its conclusion, the federal court must actually determine that the state

19 appellate court could not have affirmed the verdict under the Jackson standard in the absence of

20 an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal

21 habeas court determines sufficiency of the evidence in reference to the substantive elements of

22 the criminal offense as defined by state law. See Jackson, 443 U.S. at 324 n. 16; Chein v.

23 Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (*en banc*).

24    Viewing the evidence most favorable to the prosecution, along with the additional layer of

25 AEDPA deference applied to the appellate court's conclusion, the undersigned finds there is

26 sufficient evidence to support petitioner's convictions for criminal threats, and specifically

27 sufficient evidence of the "immediacy" element. Based on the record before the court, any

28 rational trier of fact could have found beyond a reasonable doubt that petitioner made

1   "immediate" criminal threats as defined in Cal. Penal Code 422. The victim had heard petitioner

2   screaming at her from his holding cell (ECF No. 32-8 at 183) ("The Witness: I heard him say, you

3   fucking liar, you fucking cunt. I will catch up to you one day. You will be sorry.")' the victim was

4   scared and nervous after the incident (ECF No. 32-8 at 184, 185-186); the victim confirmed it

5   was petitioner who had made those statements (ECF No. 32-8 at 162-163, 184); a witness, Officer

6   Campbell, had heard petitioner state that "he was going to catch up to [the victim] one day and

7   cut [her] up into little pieces." (ECF No. 32-8 at 185); the victim had taken the statements

8   seriously and believed petitioner would carry out what he said once he was released (ECF No. 32-

9   8 at 185); multiple witnesses heard petitioner screaming and yelling the derogatory statements

10  and assumed they were intended for the victim due to the days prior incident in the law library

11  (ECF No. 32-8 at 217-219, 252-253, 264-265).  There was sufficient evidence presented to the

12  jury for the Court of Appeal to rationally find that petitioner's threat met the "immediacy"

13  element of Section 422.   Accordingly, petitioner's first claim should be denied.

14          Claim Three: Denial of Right to an Impartial Jury

15          Petitioner argues the trial court's failure to query the jurors' ability to deliberate after their

16  return from recess due to a wildfire violated his Sixth Amendment right to an impartial jury.

17  Petitioner presented this claim to the California Court of Appeal, which affirmed the judgment on

18  February 15, 2018. ECF Nos. 32-11, 32-14. The California Supreme Court summarily denied the

19  petition for review with no explanation. ECF No. 32-15. Because the California Court of Appeal

20  was the last state court to issue a reasoned opinion on this issue, the undersigned gives AEDPA

21  deference to its opinion.

22          ***Whether the Trial Court Should Have Sua Sponte Asked Jurors***
            ***about the Effects of the Wildfire***
23

24          Defendant next argues that the trial court committed reversible error
            by failing to inquire whether jurors were unable to decide the case
25          fairly due to the then-burning Butte County wildfire. We are not
            persuaded.

26                          ***A.***

27                  ***Duty to Inquire of Jurors***

28          As the California Supreme Court has explained, "[s]ection

                                    17

1089 provides, in pertinent part: 'If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his [or her] duty, . . . the court may order him [or her] to be discharged and draw the name of an alternate . . . .' [Citation.] 'We review for abuse of discretion the trial court's determination to discharge a juror and order an alternate to serve. [Citation.] If there is any substantial evidence supporting the trial court's ruling, we will uphold it. [Citation.] We also have stated, however, that a juror's inability to perform as a juror " 'must appear in the record as a demonstrable reality.' " [Citation.]' (*People v. Marshall* (1996) 13 Cal.4th 799, 843.)

"The most common application of these statutes permits the removal of a juror who becomes physically or emotionally unable to continue to serve as a juror due to illness or other circumstances. (*People v. Fudge* (1994) 7 Cal.4th 1075, 1100 [anxiety over new job would affect deliberations]; *People v. Johnson* (1993) 6 Cal.4th 1, 23 Cal.Rptr.2d 593 [sleeping during trial]; *People v. Espinoza* (1992) 3 Cal.4th 806, 821 [sleeping during trial]; *People v. Dell* (1991) 232 Cal.App.3d 248 [juror involved in automobile accident]; *Mitchell v. Superior Court* (1984) 155 Cal.App.3d 624, 629 [inability to concentrate]; *In re Devlin* (1956) 139 Cal.App.2d 810, 812–813 [juror arrested on felony charge], disapproved on another ground in *Larios v. Superior Court* (1979) 24 Cal.3d 324, 333.) [¶] These statutes also have been applied to permit the removal of a juror who refuses to deliberate, on the theory that such a juror is 'unable to perform his [or her] duty' within the meaning of ...section 1089." (*People v. Cleveland* (2001) 25 Cal.4th 466, 474-475 (*Cleveland*), fn. omitted.)

The *Cleveland* court cautioned that "not every incident involving a juror's conduct requires or warrants further investigation. 'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court. [Citation.] . . . [¶] As [the Supreme Court's] cases make clear, a hearing is required only where the court possesses information which, if proven to be true, would constitute "good cause" to doubt a juror's ability to perform his [or her] duties and would justify his [or her] removal from the case. [Citation.]' (*People v. Ray* (1996) 13 Cal.4th 313, 343.)" (*Cleveland*, *supra*, 25 Cal.4th at p. 478.)

## B.

### Speculation Regarding the Effect of the Wildfire on Jurors' Ability to Deliberate

September 10, 2015, was the third day of trial in this case. On that day, the trial court noted: "And the record should reflect that yesterday a fire started near Amador near Jackson and has progressively gotten worse. I just got a call from one of the jurors, Juror Number 5, whose husband is disabled. And she needs to move him out of the fire zone, so I let her go immediately. [¶] Some of you are probably affected also, is that fair to say?" The court recognized

two jurors were affected and the wildfire presented an emergency. The trial court recessed the trial for five days.

Trial resumed five days later, on September 15, 2015. The trial court noted it had excused two jurors for hardship – the juror who need to help her disabled husband evacuate and a juror who was living in a car while caring for her animals. Defendant stated the circumstances were unfair to him because the trial concerned a charge the victim experienced fear and the jurors were experiencing fear due to the wildfire. The trial court rejected defendant's reasoning as follows:

"Well, first of all, I think the analogy of the fire danger and fear and a 422 is extremely misplaced. I don't buy that at all. It is true to a point that some or more of the jurors, one or more of the jurors or none of them, I don't know their situation or mindset prior to the lunch hour when everybody went out, including myself, and found out we had lost power, which is when they were essentially excused. Because that is when the evacuation orders came in. Be that as it may, I don't feel that there has been anything provided on the record yet to justify an open inquiry as to jurors' and alternatives' mindsets. I think that is a dangerous slippery slope which I am not going to do because there is really no basis for me to make inferences of the mindsets of the jurors on something that is not before the Court evidenti[arily]." Although defendant noted his objection, he offered no evidence to support the allegation jurors might not be able to deliberate fairly due to the wildfire.

The trial court called roll and determined four jurors were not present. Two jurors had previously been excused for good cause, and the trial court learned another was in the hospital with a broken wrist. The trial court then inquired: "Are any of you twelve whose names I mention the subject of any evacuation orders?" The trial court inquired whether an alternate would be able to be attentive. Receiving a positive response, the trial court seated the alternate on the jury. The missing juror never showed up and was replaced by the second alternate.

On this record, we reject defendant's speculation that jurors were unable to fairly deliberate. The record contains no indication of the size, scope, or effect of the wildfire on or after September 15, 2015. Moreover, the trial court displayed a willingness to consider and excuse jurors for hardship connected with the wildfire.

ECF No. 32-14 at 14-17.

The Sixth Amendment right to jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). Failure to provide "an accused a fair hearing violates even the minimal standards of due process." Id. "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982). Instead, "[d]ue process

19

means a jury capable and willing to decide the case solely on the evidence before it, and a trial

judge ever watchful to prevent prejudicial occurrences and to determine the effect of such

occurrences when they happen." Id. "However, the Supreme Court has stressed that the remedy

for allegations of jury bias is a hearing, in which the trial court determines the circumstances of

what transpired, the impact on the jurors, and whether or not it was prejudicial." United States v.

Angulo, 4 F.3d 843, 847 (9th Cir. 1993) (citing Remmer v. United States, 347 U.S. 227, 229-230

(1954); Smith v. Phillips, 455 U.S. 209, 216 (1982)). "An evidentiary hearing is not mandated

_every_ time there is an allegation of jury misconduct or bias." Angulo, 4 F.3d at 847. "Rather, in

determining whether a hearing must be held, the court must consider the content of the

allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source."

Id. The California juror substitution procedure provided in California Penal Code § 1089 permits

dismissal and substitution of alternate jurors for selected jurors "[i]f at any time, whether before

or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good

cause[.]" The Ninth Circuit has held that California Penal Code § 1089 preserves "the 'essential

feature' of the jury required by the Sixth and Fourteenth Amendments." Miller v. Stagner, 757

F.2d 988, 995 (9th Cir.), amended, 768 F.2d 1090 (9th Cir. 1985) (citing Williams v. Florida, 399

U.S. 78, 100 (1970). When evaluating petitioner's claim, the Ninth Circuit has held "on habeas

review, a trial court's findings regarding juror fitness are entitled to special deference." Perez v.

Marshall, 119 F.3d 1422, 1426 (9th Cir. 1997).

Review of the records indicates that the trial court did not violate petitioner's

constitutional right to an impartial jury. The first juror, Juror Number 5, was excused for good

cause by the trial court due to having to move her disabled husband who was within the

evacuation zone. See ECF No. 9 at 134, 140. Noting the progression of the wildfire was getting

worse and impacting and threatening the property and lives of the jurors and their families, the

trial court recessed the trial due to the emergency the wildfire created. Id. at 134-138. After

resuming trial, the trial court excused Juror Number 10 for good cause because she was living in

her car and trying to take care of her animals and provide for them and as a result would be

unable to serve on the jury. Id. at 140-141. Neither the prosecution nor petitioner objected to Juror

1   Number 5 and Juror Number 10 being excused. Id. at 141. Juror Number 13 was excused as an

2   alternate for good cause for being in the hospital with a broken wrist. Id. at 154. Juror Number 4

3   failed to appear and was excused and replaced by an alternate, Juror Number 14. Id. at 157-158.

4   Neither party objected to the replacement of Juror Number 4. Id. at 157. However, petitioner filed

5   a motion for mistrial and requested the jurors be queried as to their ability to fairly deliberate

6   based on the wildfire subjecting the jurors to fear and thereby prejudicing petitioner who was on

7   trial for Cal. Penal Code 422 that required the finding of fear. Id. at 144-145. The trial court

8   denied the motion and found that "the analogy of the fire danger and fear and a [Cal. Penal Code]

9   422 [criminal threats]" "extremely misplaced." Id. at 146. Although the wildfire subjected some

10  jurors to evacuation orders and loss of power, they were ultimately excused for a recess or

11  excused altogether for good cause. Id. The trial court decided there had not "been anything

12  provided on the record yet to justify an open inquiry as to the jurors' and alternates' mindsets."

13  Id. The trial found it would be a "dangerous slippery slope" to do so as there was "really no

14  basis" for the trial court to "make inferences of the mindsets of the jurors on something that is not

15  before the Court evidentiary." Id. Moreover, the court noted that "judges are extremely hesitant to

16  inquire of jurors what they are thinking while a trial is in progress. And [a court] can conduct an

17  examination of one or two depending on specific situations, but not a general situation [like here],

18  such as the fire to warrant inquiry on their mindset would be [a] big no-no." Id. at 147.

19      Here, not only did the trial court have good cause to excuse the three jurors and an

20  alternate, but the trial court was also under no duty to inquire as to the jurors' mindsets as to their

21  ability to fairly deliberate based on their exposure to a potential fear caused by the wildfire. See

22  Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir. 1990) (juror bias can be "implied or presumed from

23  the 'potential for substantial emotional involvement, adversely affecting impartiality,' inherent in

24  certain relationships" with third parties.) The trial court was mindful of the impact of the evidence

25  showing that the fear element in Cal. Penal Code §422 was, in general, the same *potential* fear the

26  jurors *may* have been experiencing due to the wildfire such that it could prejudicially impact

27  petitioner.  However, the potential "fire" fear experienced by the excused jurors had no relevance

28  to petitioner's case whatsoever—a fear of damage caused by mother nature does not relate to fear

1    engendered from a human issued threat.   The trial court did not need to hold a hearing on what

2    was already obvious.  Accordingly, based on the special deference this court must afford the

3    California Court of Appeal's decision on this issue, the court finds there was no violation of

4    petitioner's Sixth Amendment right to an impartial jury. The undersigned recommends this claim

5    be denied.

6         Part of Claim Four: Evidentiary Due Process Violation

7         One cannot blame respondent for being confused about what the real issue is with respect

8    to the admission of prior convictions involving criminal threats by petitioner; the undersigned is

9    confused as well.  Claim 4 in the FAP, ECF No. 19, at 23, 27-31 is the proverbial "dog's

10   breakfast" of jumbled issues running from whether exhaustion of the issue has taken place, to

11   primarily whether the use of prior convictions at the guilt phase, and then later at the bifurcated

12   sentencing phase where the prior convictions were found true, violated constitutional double

13   jeopardy protections.  Petitioner headlines, at least in his traverse, the admission of his prior

14   convictions led to the jury inferring that petitioner had an intent to make a threat to the victim in

15   violation of his Fourteenth Amendment right to due process. ECF No. 37 at 13-15.  But the

16   precise federal due process issue is unclear from the discussion of that issue.

17        Petitioner presented this claim to the California Court of Appeal, however, the California

18   Court of Appeal found petitioner's argument "imprecisely worded" and addressed three potential

19   arguments petitioner was attempting to make. ECF No. 32-14 at 11. The California Court of

20   Appeal specifically stated the following:

21         ***Admission of Defendant's Prior Convictions***

22              Defendant next contends the trial court "committed
         prejudicial error when it permitted the prosecutor to inform the jury
23       of [defendant's] 2006 criminal threat convictions on the issue of
         'intent' during the guilt phase of trial." This contention is imprecisely
24       worded and may refer to three different arguments: (1) the prosecutor
         committed misconduct in arguing to the jury defendant's intent could
25       be inferred from the very fact of prior convictions of section 422, (2)
         the trial court misinstructed the jury on how it could use the prior acts
26       evidence, and (3) the trial court should have told the jury about the
         circumstances of the prior convictions so that the jury could have
27       assessed for itself whether the prior convictions were sufficiently
         similar to the charged offense to constitute proof of intent.
28       Defendant's discussion of this issue meanders through all three of

22

1    these arguments. We reject them.

2    ECF No. 34-14 at 11.

3        Claim 4 again demonstrates the murkiness of issues as a result of petitioner's constant

4    shift in theories. The undersigned finds the Court of Appeal's discussion to be on point and

5    correct. In the petition for review before the state supreme court, the briefing before the state

6    supreme court in the petition for review was a cut and paste from the appellate briefing. Compare

7    ECF No. 32-11 at 19-24, with ECF No. 32-15 at 24-29.

8        It is not possible to give AEDPA deference to the Court of Appeal's decision in that all of

9    the three sub-issues were decided on procedural grounds, i.e., prosecutor's argument forfeited for

10   lack of objection; jury instruction argument forfeited by lack of proper presentation; and

11   underlying facts issue forfeited by failure to object.  See People v. Becker, supra, 2018 WL

12   897499, at *5, 6.  The California Supreme Court's silent denial on the petition for review

13   presumably adopted that explanation.  For whatever reason, respondent has not asked that the due

14   process part of Claim 4 be procedurally defaulted.

15       However, there need be no discussion of pre-AEDPA "prior bad acts" case law, e.g.,

16   McKinney v. Rees, 993 F.2d 1378 (9th Cir. 1993), in that petitioner, acting as his own counsel

17   stipulated to the error he claims here.  Certainly, petitioner objected initially to any admission of

18   prior criminal acts *per se,* but that is not the issue, nor could it be. Both state and federal law

19   permit the use of prior misconduct to assist in proving certain facts. Cal Evid. Code § 1101[9]; Fed.

---

[9] Cal. Evidence Code Section 1101 provides:

    § 1101. Evidence of character to prove conduct

    (a) Except as provided in this section and in Sections 1102, 1103,
    1108, and 1109, evidence of a person's character or a trait of his or
    her character (whether in the form of an opinion, evidence of
    reputation, or evidence of specific instances of his or her conduct) is
    inadmissible when offered to prove his or her conduct on a specified
    occasion.

    (b) Nothing in this section prohibits the admission of evidence that a
    person committed a crime, civil wrong, or other act when relevant to
    prove some fact (such as motive, opportunity, intent, preparation,
    plan, knowledge, identity, absence of mistake or accident, or whether
    a defendant in a prosecution for an unlawful sexual act or attempted
    unlawful sexual act did not reasonably and in good faith believe that

23

R. Evid. 404(b)(2).  There is no authority that the introduction of prior criminal acts is unconstitutional *per se*. The only issue preserved for federal habeas review is that the lack of specificity of facts violated due process in that admission of the prior convictions were more prejudicial than probative, i.e., how could the jury know how to analyze the prior convictions for a limited purpose in the absence of facts.[10]  But petitioner stipulated to keeping the facts out because he thought them too prejudicial. Relevant portions of the trial transcripts are provided:

> THE COURT: I see what you're doing. Let me ask a question since I don't know the underlying basis for all of 13 these convictions on that August 23rd date, 2006. Were these, if you know, maybe you don't know, but Mr. Trudgen, were these incidents which were threats similar to what we have today or are they threats like bomb threats I have not obtained the 21 reports.?

> MR. TRUDGEN: I am under the impression that they were bomb threats by telephone, and that the bomb threats and 422 convictions were somewhat in the alternative, but I am only gleaning that from the 969(b.)  I have not obtained the reports.

> I am however only in particular looking to present these to the jury only for the idea that it would tend to show intent. And so I could work into the stipulation specific language borrowed from the CalCrim that suggests that it only goes to show that if the jury finds that he said what he said and it was directed at Ms. Hinkel as alleged.

> […]

> MR. BECKER: Your Honor, rather than that instruction using those specific adverbs, it could be more of a generic instruction to just say the defendant has suffered prior convictions of 422 rather than trying to make it more sounding of a harmful language that there are several or that there is 26. It can just say the defendant has suffered prior convictions.

> THE COURT: Okay. Would you stipulate to that?

---

the victim consented) other than his or her disposition to commit such an act.

(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness.

[10] Petitioner did not in any way raise or brief a prosecutorial misconduct issue, not does he plead or brief in the slightest how the jury may have been mis-instructed.  Indeed, his argument that the specificity of the factual circumstances of the prior convictions depends, in part, on the instruction that was given advising the jury that it should consider such circumstances.  The court will not raise issues for petitioner, nor will it adjudicate an issue not raised herein. The failure to meaningful present or brief an issue waives it.  United States v. Vought, 69 F.3d 1498, 1501 (9th Cir. 1995); Collins v. City of San Diego, 841 F.2d 337, 339 (9th Cir. 1988).

24

1    MR. BECKER: Yes.

2    MR. TRUDGEN: I would join in that.

3    THE COURT: Okay.

4    MR. BECKER: Over the same objection.

5    THE COURT: You preserve your objection to any of it being
     admitted. That actually is perfect. Let's just state on August 23rd,
6    2006, he was convicted of several felony counts, instead of criminal
     threats, we will say violations of Penal Code Section 422. Is that
7    okay?

8    MR. BECKER: Yes. That is the lesser.

9    MR. TRUDGEN: May I see the stipulation again? I somehow
     misplaced mine.
10
     THE COURT: I am going to put just the one paragraph. I think that
11   resolves that. I have stricken criminal threats because Section 422 is
     going to be repeated in the jury instruction. I mean, in the verdict
12   form so they will know the section.

13   MR. TRUDGEN: If I understood Mr. Becker correctly, I think he
     was more concerned about several.
14
     THE COURT: Do you object to the several or what did you object
15   to?

16   MR. BECKER: In other words, this could read, that defendant,
     Joseph Becker, was convicted of felony counts, criminal threats, or
17   just we can leave it as you did. Joseph Becker was convicted of
     felony counts of Penal Code Section 422 leaving out several.
18
     MR. TRUDGEN: I am satisfied leaving out several.
19
     THE COURT: Okay.
20
     MR. TRUDGEN: I would like the criminal threats words to be in
21   there.

22   MR. BECKER: They will see that anyway.

23   THE COURT: That is fine. That will be read to and not given to them
     as an exhibit, and I will ask for a stipulation on the record and that is
24   it. Okay. Let me read the stipulation so there is no -- I need to change
     it again.
25
     MR. TRUDGEN: I believe that both sides are happy with just
26   striking the word "several."

27   THE COURT: Yes.

28   MR. TRUDGEN: And then striking the phrase after criminal threats.

1    THE COURT: After criminal threats, the whole rest of the paragraphs?

2

3    MR. TRUDGEN: In violation of Penal Code Section 422.

4    MR. BECKER: That is fine.

5    THE COURT: Do you want to leave just several felony counts of criminal threats? Is that what you are saying?

6    MR. TRUDGEN: It is. And I think that is what Mr. Becker is saying.

7    THE COURT: Is that okay with you, Mr. Becker?

8    MR. BECKER: Yes. Then period after threats, then the rest redacted.

9    THE COURT: That is okay.

10   ECF No. 32-8 at 237-238; 245-247.

11           Petitioner completely misconstrued the purpose for the other crimes admission when he

12   objected "101%." He thought they were to be used to impeach his testimony, and that he was not

13   testifying. ECF No. 32-8 at 233-234. Of course, in hindsight, petitioner as his own attorney,

14   should have objected on the basis that the specific facts had to be shown to the jury so that it

15   could determine the §1101 pertinence, but that the specific facts were much more harmful than

16   probative. Thus, the objection would continue—the prior convictions needed to be kept out. To

17   this day, we have not much idea of the specifics of the prior convictions, except that the facts

18   there involved bomb threats. For petitioner to object on erroneous grounds, then accept, and even

19   encourage, the factless introduction of prior convictions, and then claim in federal court that

20   without the facts the jury was "at sea" without the conviction details in terms of how to use the

21   prior convictions, is a road too far to travel. Petitioner is unable to state a claim that as his own

22   attorney, he was ineffective in objecting to the prior criminal conviction evidence.[11]

23   _____

24   [11] This is not to say that the undersigned has no qualms about admission of the prior convictions. While a sanitized conviction record is often used when impeaching a testifying witness, including

25   a defendant who testifies, it is difficult to conceive how such a tactic could be used when using the prior conviction to assist in demonstrating intent, or identity, modus operandi, etc. as required

26   by Cal. Evid. Code Sec. 1101 and Fed. R. Evid. 404(b). For example—assuming identity of a defendant-as-robber was a live issue in an ongoing criminal trial—if the defendant had previous

27   robbery convictions using a Ronald McDonald clown mask when attempting those robberies, and the robber in the instant criminal trial used such a clown mask, that specific fact tends to show the

28   identity of defendant as the robber for the ongoing criminal trial. But just showing that the

1    But even if the undersigned is in error with respect to whether petitioner made his own

2    error and failed to preserve the proper objection, it is clear that no substantially prejudicial effect

3    was felt because of the introduction of the other crimes evidence. Brecht. v. Abrahamson, 507

4    U.S. 619 (1993). The facts of this case demonstrate how hard petitioner worked to ensure that his

5    victim heard his threat, i.e., how much he intended to convey the threat. The threats were

6    multiple, loud and long; at one point, petitioner was yelling in vulgar terms that he knew the

7    victim could hear him. The only logical inference from such conduct is that petitioner fully

8    intended the victim to hear what he was saying. Given the facts, intent to convey the threat was

9    the easiest element of Cal. Penal Code § 422 to prove. Introduction of extraneous other crimes

10   involving petitioner's other threats could have had little impact on the finding of intent.  Nor

11   would the introduction of the other crimes have much effect on the other elements of § 422 as

12   those elements are fairly case specific. For example, whether there was a sufficient immediacy of

13   the threat in petitioner's case would not be affected by other crime evidence.

14   Claim 4's evidentiary due process claim should be fully denied.

15   *Conclusion*

16   Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

17   issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A

18   certificate of appealability may issue only "if the applicant has made a substantial showing of the

19   denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings

20   and recommendations, a substantial showing of the denial of a constitutional right has not been

21   made in this case.

22   Accordingly, IT IS HEREBY RECOMMENDED that:

23   1.  The first amended habeas petition (ECF No. 19) should be DENIED; and

24   2.  The District Court decline to issue a certificate of appealability.

25   These findings and recommendations are submitted to the United States District Judge

26   _____

27   defendant had been previously convicted of robbery has little understandable pertinence to the
     identity issue.  Turning to this case, the fact *per se* that petitioner had prior threat convictions does
28   not say much about whether the intent facts shown in those previous convictions are relevant to
     the conviction at issue.

27

1   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

2   after being served with these findings and recommendations, any party may file written

3   objections with the court and serve a copy on all parties. Such a document should be captioned

4   "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

5   shall be served and filed within fourteen days after service of the objections. The parties are

6   advised that failure to file objections within the specified time may waive the right to appeal the

7   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8   Dated:  October 13, 2020

9      /s/ Gregory G. Hollows<br>UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28